Dowd, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| David Mann, | ) | Case No. 1:06 CV 17288 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| Lincoln Electric Co., et al., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| | ) | |
| | ) | |

This action is brought by plaintiff David Mann, a welder, against four manufacturers of welding rods: (1) Lincoln Electric Company; (2) Hobart Brothers Company; (3) The ESAB Group, Inc.; and (4) BOC Group, Inc. f/k/a Airco, Inc. The gravamen of Mann's complaint is that the defendants failed to warn him of the hazards of using welding rods – specifically, that inhaling manganese contained in the fumes given off by welding rods could cause him to suffer permanent brain damage. In the first and second counts of his second amended complaint, Mann asserts the defendants are liable for fraud for failure to disclose, and fraudulent concealment. Mann alleges the defendants: (1) "failed to disclose and concealed material facts within their knowledge," being the hazard posed by inhaling manganese in welding fumes; (2) "knew that [Mann] was ignorant of the [hazard] and did not have an equal opportunity to discovery [sic] the truth about the dangers presented by defendants' products;" and (3) "intended to induce [Mann]

(1:06 CV 17288)

to . . . buy and use their products, by failing to disclose the [hazard]."[1] In the second count of his second amended complaint, Mann further asserts that all of the defendants engaged in a conspiracy to commit fraud by, for example, acting together to deliberately "conceal, misrepresent, and suppress material scientific and medical information about the toxic effects of manganese in welding fumes."[2]

Defendants seek summary judgment on Mann's fraud and conspiracy claims, which the parties agree are governed by South Dakota law. For the reasons stated below, the motion (docket no. 48) is **GRANTED**.

## I. BACKGROUND

This case has been consolidated with the Multidistrict Litigation known as *In re: Welding Fume Prods. Liab. Litig.*, case no. 03-CV-17000, MDL no. 1535. Previously, the MDL Court has issued four opinions addressing fraud claims brought by other plaintiffs in *Welding Fume* bellwether cases: (1) *Ruth v. A.O. Smith Corp.*,[3] which was governed by Mississippi law; (2) *Tamraz v. Lincoln Elec. Co.*,[4] which was governed by California law; (3) *Jowers v. BOC Group, Inc.*,[5] which was also governed by Mississippi law; and (4) *Cooley v. Lincoln Elec. Co.*,[6] which was governed by Iowa law. The results in these four cases were: (1) in *Ruth*, the MDL Court

---

[1] Second amended complaint at ¶¶78-80.

[2] *Id.* at ¶¶69-70.

[3] 2005 WL 2978694 (N.D. Ohio Oct. 11, 2005).

[4] 2007 WL 3399721 (N.D. Ohio Nov. 13, 2007).

[5] 2009 WL 995613 (S.D. Miss. Apr. 14, 2009) (appeal pending).

[6] Docket no. 199, case no. 05-CV-17734 (N.D. Ohio Aug. 31, 2009).

(1:06 CV 17288)

granted defendants' motion for summary judgment on the fraud claim; (2) in *Tamraz*, the MDL Court denied the motion for summary judgment motion, but the jury found for the defendants on the fraud claim; (3) in *Jowers*, the MDL Court denied defendants' motion for summary judgment on the fraud claim, but later granted a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50; and (4) in *Cooley*, the MDL Court granted defendants' motion for summary judgment on the fraud claim.

In the *Cooley* opinion, the MDL Court summarized the reasoning and facts in the first three opinions, and then applied the same reasoning to the relevant facts under applicable Iowa law. With their motion in this case, defendants ask the Court to undertake the same analysis under applicable South Dakota law. Rather than reiterate the reasoning set out in the prior MDL opinions, this Court incorporates them here.[7] It suffices to say that the result in each of those opinions depended on the intersection of: (1) the contours of applicable state law – specifically, the extent to which state law imposes upon a manufacturer "a duty to communicate 'material information' to the ultimate user of the manufacturer's product";[8] and (2) the facts of the case – specifically, whether the plaintiff's evidence in support of his fraud claim was an omission or an

---

[7] The Court hereby incorporates by reference the *Ruth*, *Tamraz*, *Jowers*, and *Cooley* opinions cited above. In addition, the Court also incorporates by reference the MDL Court's recitations of the general background of the MDL and the undisputed facts applicable to this case, as set out in the following Orders: *Jowers v. Lincoln Elec. Co.*, 608 F.Supp.2d 724 (S.D. Miss. 2009) (reviewing evidence in the context of assessing a post-judgment motion) (appeal pending); *In re Welding Fume Prods. Liab. Litig.*, 2007 WL 3226951 (N.D. Ohio Oct. 30, 2007) (granting summary judgment to defendant Caterpillar in all MDL cases); and *In re Welding Fume Prods. Liab. Litig.*, 2007 WL 1087605 (N.D. Ohio April 9, 2007) (granting summary judgment to defendant Metropolitan Life Insurance Company in all MDL cases). Should any party later wish to appeal this Order, the Court makes clear here that the other rulings so incorporated must be included as an addendum to this Order and made a part of the appellate record.

[8] *Cooley*, docket no. 199 at 7.

(1:06 CV 17288)

affirmative statement, and whether it was made by defendants on their product warning labels, or on other materials. For example, in *Cooley*, the Court found that, under Iowa law:

1. A manufacturer who knowingly includes <u>a false affirmative statement on its product warning label</u> may be liable for fraud, if plaintiff can show he relied on it;

2. A manufacturer who knowingly includes <u>a false affirmative statement or omission in a communication *other than* its product warning label</u> may be liable for fraud, if plaintiff can show he relied on it;

3. A fraudulent concealment theory fails as a matter of law when the plaintiff relies only on alleged <u>omissions in the manufacturer's product warning labels</u>; and

4. A plaintiff could bring the type of "indirect reliance" fraud claim that was permitted in *Jowers*.[9]

*See Cooley*, docket no. 199 at 14-16. Following this template, this Court turns to an examination of South Dakota law and the evidence upon which Mann relies for his fraud claim.

## II. ANALYSIS

In counts 1 and 2 of his complaint, Mann alleges two fraud-based claims. The first is for "fraudulent concealment" under South Dakota Codified Law 20-10-2(3), commonly known as a claim for "statutory deceit."[10] The second is for common law fraud based on a failure to disclose material information. South Dakota courts have recognized that "[t]he elements for common law

---

[9] Jowers asserted that, "even though he cannot point to any affirmative misrepresentations made by the defendants upon which he relied *directly*, the defendants made affirmative misrepresentations *to his employer*, Ingalls Shipyard, with the expectation that Ingalls would essentially repeat those misrepresentations to him; and, further, that Ingalls supervisors and managers did, in fact, pass on those misrepresentations and Jowers did, in fact, reasonably rely upon them." *Jowers*, 2009 WL 995613 at *7 (emphasis added). The Court allowed Jowers to pursue this theory at trial, although he ultimately did not muster sufficient evidence to avoid a Rule 50 motion.

[10] *Northwestern Pub. Serv. v. Union Carbide Corp.*, 236 F. Supp. 2d 966, 972 (D.S.D. 2002).

(1:06 CV 17288)

fraud and statutory deceit are essentially identical under South Dakota law."[11] Under either theory, the Court "must first determine whether sufficient evidence in the record supports [a] conclusion that [the defendants] intentionally or recklessly misled [the plaintiff] by . . . suppressing facts that [the defendants] had the duty to disclose."[12] Thus, as a threshold inquiry, this Court must assess the extent, if any, to which South Dakota law imposes upon the manufacturer-defendants a "duty to disclose" that flows to Mann.

In *Taggart v. Ford Motor Credit Co.*, the South Dakota Supreme Court stated it "has never imposed a duty to disclose information on parties to an arm's-length business transaction, absent an employment or fiduciary relationship."[13] Defendants argue that, *a fortiori*, no such duty flows from them to Mann, as they never engaged in any arm's length business transaction with him; rather, they are merely manufacturers of a product that he used (and which others purchased for his use). Defendants also assert that, *even if* they had engaged in a business transaction directly with Mann, they never shared an employment or a fiduciary relationship – a

---

[11] *Stockmen's Livestock Mkt., Inc. v. Norwest Bank, N.A.*, 135 F.3d 1236, 1243 (8th Cir. 1998).

[12] *Id.; see also* S.D. Codified Laws §20-10-2(3) (to prevail on a claim for fraudulent concealment/statutory deceit, the plaintiff must prove "suppression of a fact by one who is bound to disclose it"); *Harding County v. Frithiof*, 575 F.3d 767, 774 (8th Cir. S.D. 2009) ("[n]o fraud action for intentional concealment will lie absent a duty to disclose").

[13] *Taggart*, 462 N.W.2d 493, 499 (S.D. 1990); *see id.* ("Cases where this court has found a duty to disclose have all involved an employment or fiduciary relationship."). The South Dakota Supreme Court subsequently added that a claim for fraud may succeed if "[o]ne party to a business transaction [fails] . . . to exercise reasonable care to disclose to the other before the transaction is consummated . . . facts basic to the transaction." *Ducheneaux v. Miller*, 488 N.W.2d 902, 913 (S.D. 1992).

(1:06 CV 17288)

point that Mann does not contend.  This is the precise basis upon which the MDL Court granted summary judgment to defendants on the fraud claim in the bellwether trial of *Ruth*.[14]

Mann responds that a South Dakota Supreme Court case decided after *Taggart* holds that, in certain circumstances, a duty to disclose information may still arise even if the parties do not have an employment or a fiduciary relationship, and even if they never engaged in an arm's-length business transaction.  In *Holmes v. Wegman Oil*,[15] the defendant, White-Rogers – a manufacturer of water heater controls – learned that a knob on its control was defective, which could lead to gas leaks.  Over a period of ten years, beginning in about 1970, this problem led to at least 22 explosions, 5 deaths, 19 other injuries, and numerous lawsuits.  White-Rogers was required to report these incidents "immediately" to the United States Consumer Product Safety Commission ("CPSC"), but did not do so until 1980; at that juncture White-Rogers obtained approval from the CPSC to undertake a recall campaign.  White-Rogers' recall efforts, however, were lame – despite initial intentions to contact dealers alphabetically to obtain lists of consumers who bought products with the defective knob, White-Rogers "stopped after reaching the letter 'C'".[16]  In 1983, one of White-Rogers' defective knobs led to an explosion that injured five members of the Holmes family, including one death.  The defective knob was not original to the water heater that exploded – it was a replacement knob.

---

[14] "The relationship between Ruth and the defendants . . . was simply one of product-user / product-manufacturer.  Given that Ruth and the defendants had no direct contact at all, and no agreement existed between them, there is no valid basis for finding – or arguing – that a fiduciary relationship existed between them."  *Ruth*, 2005 WL 2978694 at *4.

[15] 492 N.W.2d 107 (S.D. 1992).

[16] *Id.* at 110.

(1:06 CV 17288)

Among other claims against White-Rogers, the plaintiffs in *Holmes* asserted fraudulent concealment. The jury found in favor of plaintiffs. On appeal, White-Rogers argued that, "since the knob sold to Holmes was 'used' and under recall, [the plaintiff] was not within the class of persons it was required to inform" about the hazards of the knob.[17] This argument was tantamount to an assertion that White-Rogers owed no duty to the plaintiff. The court rejected this assertion, however, ruling that "[p]rivity is not a requirement in products liability actions premised on fraudulent concealment. * * * As a member of the general public of potential LP gas users, Holmes was within the class of persons misled by White-Rodgers' fraudulent concealment."[18] Mann points to this ruling and notes that White-Rogers and Holmes never engaged in a business transaction, did not have an employment relationship, and did not have a fiduciary relationship. Mann asserts that, accordingly, South Dakota law allows him to pursue his claims for fraud against the defendants.

Mann's argument ignores a critical fact in *Holmes*, however, which is that: (a) White-Rogers had a statutory obligation to report the knob defects to the CPSC, and (b) the CPSC exercised its authority to "order the manufacturer . . . of the product to . . . notify all persons . . . to cease immediately distribution of the product, . . . [t]o mail notice to each person who is a manufacturer, distributor, or retailer of such product, [and] [t]o mail notice to every person to whom . . . such product was delivered or sold."[19] In other words, White-Rogers had a statutory duty imposed upon it, not merely by South Dakota law but by the CPSC pursuant to federal law;

---

[17] *Id.* at 112.

[18] *Id.*

[19] 15 U.S.C. §2064 (cited at *Holmes*, 492 N.W.2d at 112).

(1:06 CV 17288)

further, that statutory duty flowed to Holmes.  There is no analogous federal statutory duty identified by Mann.  Rather, Mann relies only on South Dakota law generally.  And, as a general matter, South Dakota law holds that a product manufacturer does not owe a product user a duty to disclose capable of giving rise to a fraud claim.

Certainly, Mann may pursue a claim against the defendants that they breached a duty to warn him of the hazards of its products.  But, without more, this Court will not construe South Dakota law to allow this alleged breach to also support a claim for fraud.  As the MDL Court observed in the *Ruth* case:

> [C]laims that a cigarette manufacturer has not warned of known product dangers are generally not cognizable as fraudulent concealment claims under Kansas law. Rather, they are cognizable as failure to warn claims.  To hold otherwise would convert all product manufacturer's duty to warn claims into fraud claims.  We do not believe Kansas courts would intend such a result.[20]

This Court does not believe South Dakota courts would intend such a result, either.  Given this Court's obligation to "choose the narrower and more reasonable path" when choosing "between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability,"[21] this Court must reject Mann's argument that South Dakota law imposes a fraud-based duty to disclose in product liability cases premised on allegedly deficient warning labels.

Finally, it must be noted that, separate from the Court's conclusion regarding the scope of South Dakota law, defendants are entitled to summary judgment on Mann's fraud claims based

---

[20] *Ruth*, 2005 WL 2978694 at *5 (quoting *Burton v. R.J. Reynolds Tobacco Co.*, 397 F.3d 906, 913 (10th Cir. 2005)).

[21] *Combs v. International Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (citation and internal quotation marks omitted).

(1:06 CV 17288)

on the undisputed facts, as well.  Even assuming that South Dakota law is as broad as Iowa law, which the MDL court examined in *Cooley*, Mann has not adduced sufficient evidence to avoid summary judgment.  As set forth above, the *Cooley* Court concluded that Iowa law allows a plaintiff to pursue a fraud claim in a warnings case if the plaintiff can show he relied directly or indirectly on: (1) a false affirmative statement by a manufacturer on a product warning label; or (2) a false affirmative statement or omission by a manufacturer in a communication *other than* a product warning label.[22]  In his opposition brief, Mann does not assert he or his employers relied directly or indirectly on these types of communication.  At most, Mann suggests his employers may have relied on *omissions* in the defendants' "warning labels and material safety data sheets."[23]  Even under Iowa law, a plaintiff may not succeed on a fraud claim premised only upon omissions in the manufacturer's product warning labels.[24]

In sum, based on the undisputed material facts, defendants are entitled to summary judgment on Mann's fraud claims, as a matter of law.

### III.  CONSPIRACY

In addition to the fraud claims asserted in Counts 1 and 2 of his complaint, Mann also asserts the defendants are liable for conspiracy to commit fraud.  In their motion, defendants state that "Plaintiff's counsel has agreed that Mr. Mann's conspiracy allegations can proceed to trial only to the extent that his fraud-based claims survive summary judgment."[25]  Plaintiffs do

---

[22] *Cooley*, docket no. 199 at 14-16.

[23] *See generally* Mann's response brief at 5-6.

[24] *Cooley*, docket no. 199 at 16.

[25] Motion at 16.

(1:06 CV 17288)

not argue otherwise, probably because the MDL Court has already so ruled in *Ruth*: "the independent tort which is the object of the conspiracy alleged by Ruth must be an intentional tort, as a matter of law. In this case, the only intentional tort pleaded by Ruth is fraudulent concealment[, so the conspiracy claim also fails]."[26]

Accordingly, the Court grants defendants' motion on Mann's conspiracy claims, as well. Since the conspiracy claims were the only claims remaining against defendants ESAB and BOC, those parties are dismissed as defendants in this case.

**IT IS SO ORDERED.**

April 23, 2010 /s/ David D. Dowd, Jr.
Date David D. Dowd, Jr.
United States District Judge

---

[26] *Ruth*, 2005 WL 2978694 at *3.