**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **DAVID MANN,** ) | **Case No. 1:06-CV-17288** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **LINCOLN ELECTRIC CO.,** ) | |
| ) | **Judge David D. Dowd** |
| **Defendant** ) | |
| ) | |
| ) | **MEMORANDUM & ORDER** |
| ) | |

As a means of providing support and assistance to the Honorable Kathleen McDonald O'Malley, who is the *Welding Fume* MDL transferee judge, the undersigned agreed to preside over the trial of the above-captioned MDL bellwether case. On May 27, 2010, following a three-week trial, the jury returned a verdict for defendant Lincoln Electric Company. The following day, this Court entered judgment in accord with the verdict.

Plaintiff David Mann then timely filed a motion for new trial (docket no. 187). For the reasons stated below, this motion is **GRANTED**. Further, this Court suggests to Judge O'Malley that, since all pretrial matters in this case are concluded, it may be appropriate to remand the case to the original transferor court, pursuant to 28 U.S.C. §1407.

**I.     Background.**

Plaintiff David Mann originally brought this action against five defendants, all of which are manufacturers of welding rods: (1) Lincoln Electric Company ("Lincoln"); (2) Hobart Brothers Company; (3) The ESAB Group, Inc.; (4) BOC Group, Inc. f/k/a Airco, Inc.; and (5) TDY Industries. Due to various pretrial and mid-trial rulings, Mr. Mann pursued his claims to verdict at trial against only the first

defendant, Lincoln. Mr. Mann originally asserted eight claims but, due to other pretrial rulings, pursued only two at trial: (1) negligent sale of a product; and (2) strict liability due to marketing defect. The gravamen of Mr. Mann's lawsuit was that Lincoln failed to warn him that inhaling manganese contained in the fumes given off by welding rods could cause him to suffer permanent brain damage. The parties agreed that South Dakota law applied to Mr. Mann's claims, as that is where he spent his welding career.

At trial, there were two main areas of proof in Mr. Mann's case. First, Mr. Mann offered evidence to show his illness was, in fact, caused by inhaling welding fumes. Lincoln responded by offering evidence to show Mr. Mann's illness was unrelated to welding fume exposure. Second, Mr. Mann offered evidence to show that Lincoln's warnings did not adequately inform welders of the hazard that welding fumes can cause neurological damage. Lincoln responded by offering evidence to show its warnings were adequate to inform Mr. Mann of this hazard.

In addition to its responsive evidence noted above, Lincoln also offered evidence to show that Mr. Mann's *employer* had full knowledge of the hazards of welding fumes – including knowledge that manganese in the fumes can cause neurological damage – and this employer passed along adequate warnings to Mr. Mann. In response, Mr. Mann offered evidence to show his employer did not have knowledge of the hazard that manganese in welding fumes can cause neurological damage, and so could not, and did not, pass this knowledge on to him.

Toward the end of trial, the Court discussed with counsel the content of final jury instructions. During this discussion, the Court and the parties focused on one particularly difficult topic – the appropriate instructions regarding the role of Mr. Mann's employer. The Court observed, and the parties agreed, that "there is possibly an issue without any guidance from South Dakota as to whether the intervening defense of Trail King [Mr. Mann's employer] being responsible for all this should have

2

application with respect to strict liability." Trial tr. at 2738 (May 21, 2010). The Court noted that "there isn't any declaration by South Dakota on such an issue, which then puts me into the speculation mode." *Id.* The Court and the parties sometimes referred to this issue as the "sophisticated user defense," and sometimes (more properly) as the "learned intermediary defense." *Id.*[1]

Mr. Mann took the position that the learned intermediary defense is not recognized at all in South Dakota, neither to a claim of strict liability nor to a claim of negligence. Mr. Mann noted that the South Dakota Pattern Jury Instructions ("SDPJI"), upon which both parties otherwise relied heavily, contained no instruction addressing the learned intermediary defense. Mr. Mann further asserted that no South

---

[1] *Compare* trial tr. at 2738, 2814-17 (May 21, 2010). As the *Welding Fume* MDL Court has noted, the more accurate description of the issue is the "learned intermediary defense." The MDL Court has explained: "The Sophisticated User Defense is premised upon the rule that a manufacturer need not warn *members of a trade or profession* (sophisticated users) about dangers generally known to that trade or profession." *Trial Template Order* (master docket no. 2389) at 33 (emphasis added). In contrast, "[t]he Learned Intermediary Defense provides that a manufacturer may discharge its duty to warn by providing information about the product's hazards *to a third person*, upon whom the manufacturer can reasonably rely to communicate the information to the ultimate users of the product." *Id.* at 33-34 (emphasis added). "While the Sophisticated User Defense focuses upon the knowledge of the end-user (here, the welder-plaintiff, himself), the Learned Intermediary Defense focuses upon the knowledge of the entity that provides the product to the end-user (here, the welder-plaintiff's employer)." *Id.* at 34.
    The issue the Court discussed at length with the parties in this case was whether the jury should be instructed to determine whether Mr. Mann's employer, Trail King, was a learned intermediary, so that warnings given by Lincoln to Trail King would fully satisfy Lincoln's duty to warn. There was virtually no discussion of whether the jury should be instructed that, if the hazard of suffering brain damage from welding fumes was already known generally by *welders*, then the defendants had no duty to warn Mr. Mann. Thus, the focus of the discussion was the applicability of the learned intermediary defense, not the sophisticated user defense.
    Unfortunately, other courts often refer to the "learned intermediary defense" more specifically and narrowly as "a doctrine which would absolve drug manufacturers from liability for failure to warn of a pharmaceutical's dangers if adequate warnings were provided to a patient's physician." *Roney v. Gencorp*, 654 F.Supp.2d 501, 504 (S.D. W.Va. 2009). Further, other courts also hold that the "sophisticated user defense" refers not to end-users but to employers: for example, the sophisticated user defense applies "if the danger related to the particular product is clearly known to the purchaser/employer . . . . [W]hen the supplier has reason to believe that the purchaser of the product will recognize the dangers associated with the product, no warnings are mandated." *Id.* at 506. As explained further below, this problem with terminology negatively affected the Court's instructions.

Dakota case had ever applied or recognized the learned intermediary defense. And Mr. Mann argued that adoption of the learned intermediary defense was irreconcilable with a Pattern Jury Instruction that did exist, SDPJI 12-04, titled "Concurrent Negligence."[2]

In response, Lincoln conceded many of Mr. Mann's points. Lincoln acknowledged there was no Pattern Jury Instruction addressing the learned intermediary defense, and admitted there was no case applying South Dakota law that recognized the defense.[3] Lincoln also acknowledged the import of SDPJI 12-04, which is that even if another entity – such as Trail King – was partly responsible for causing Mr. Mann's harm, Lincoln's own negligence, if any, was not excused. Nonetheless, Lincoln argued that: (1) South Dakota would recognize the learned intermediary defense as applicable in the circumstances of this case; (2) the learned intermediary defense should apply to both the strict liability and negligence claims asserted by Mr. Mann; and (3) SDPJI 12-04 did not counsel otherwise.

Ultimately, the Court concluded that the learned intermediary defense was an increasingly accepted doctrine and South Dakota would likely recognize it, but only as a defense to a claim of negligence, not

---

[2] SDJPI 12-04 reads: "More than one person may be responsible for causing injury to another. If you find that the defendant was negligent and that the defendant's negligence was a proximate cause of the plaintiff's injury, it is not a defense that some third party, not a party to this action, was partly responsible." Mr. Mann argued this instruction means that any partial fault of Trail King was not a defense to liability for Lincoln; accordingly, if Lincoln gave warnings to Trail King, but Trail King negligently failed to pass the warnings on to Mr. Mann, Trail King's negligence could not relieve Lincoln of liability – even if Trail King was a learned intermediary.

[3] *See* trial tr. at 2800 (May 21, 2010) ("I don't have any case law that says specifically South Dakota recognizes it, not from South Dakota courts, no."); *id.* at 2801 ("Our argument is that sophisticated user should apply under South Dakota law. Can I give you a case under South Dakota where that's occurred? No, I can't.").

Lincoln has since asserted that South Dakota case law does, at least implicitly, recognize the learned intermediary defense. *See* response brief (docket no. 193) at 15 (citing *Zacher v. Budd Co*., 396 N.W.2d 122 (S.D. 1986)). That this is questionable is perhaps best demonstrated by the fact that Mr. Mann cites *Zacher* for the proposition that South Dakota does *not* recognize the learned intermediary defense. The Court concludes *Zacher* ultimately sheds little light on the question of whether South Dakota would adopt the learned intermediary defense.

4

strict liability.[4] Accordingly, the Court instructed the jury regarding "the second affirmative defense to Mr. Mann's claim for negligence raised by the defendant, [which] is called the 'sophisticated user defense.'"[5] The Court told the jury that "[a] manufacturer has no duty to warn about potential hazards associated with its products when it sells them to a sophisticated purchaser on whom it can reasonably rely to warn ultimate product users."[6] The Court instructed the jury that, if it concluded Lincoln proved the elements of the sophisticated user defense, then it must return a verdict for Lincoln.

The Court then provided the jury a number of interrogatories for the purpose of returning a verdict. The first interrogatory asked the jury whether Mr. Mann had proved all the elements of his claim of strict products liability; the jury answered "no." The second interrogatory asked the jury whether Mr. Mann had proved all the elements of his claim of negligence; the jury answered "yes." The third interrogatory asked the jury whether Lincoln had proved "that David Mann's employers were sophisticated purchasers of welding consumables, so that the defendant had no duty to warn David Mann directly regarding any danger from the use of welding consumables?" The jury answered "yes." The jury did not go on to answer interrogatories regarding contributory negligence or damages, because the jury's determination that Lincoln had prevailed on its "sophisticated user defense" to Mr. Mann's negligence claim brought their deliberations to a close. The Court entered judgement in favor of Lincoln, in accord with the jury's verdict.

---

[4] Trial tr. at 2853-54 (May 24, 2010).

[5] *Id.* at 2907. As is made clear in this opinion, although the Court referred to the affirmative defense as the "sophisticated user defense" when instructing the jury, it actually described the "learned intermediary defense."

[6] *Id.* at 2908.

5

**II.     Legal Standard.**

Pursuant to Fed. R. Civ. P. 59(a)(1)(A)&(e), the Court is empowered to grant a new trial and/or to alter or amend a judgment. "The authority to grant a new trial is confined almost entirely to the exercise of discretion on the part of the trial court" and "it is the duty of the judge to set aside the verdict and grant a new trial if he is of the opinion that the verdict is against the clear weight of the evidence." *Williamson v. Owens-Illinois, Inc.*, 787 F.2d 594, 1986 WL 16533 at *3 (6th Cir. Feb. 11, 1986) (quoting 11 Wright & Miller, *Federal Practice and Procedure*, § 2806 (1973)). "Thus, on a motion for a new trial, as contrasted with a motion for directed verdict or for judgment n.o.v., the judge may set aside the verdict even though there exists substantial evidence to support it." *Id*.

Motions for a new trial are governed by Rule 59(a). In "a diversity case, the question of whether a new trial is to be granted is a federal procedural question and is to be decided by reference to federal law." *Toth v. Yoder, Co.* 749 F.2d 1190, 1197 (6th Cir. 1984); *Anchor v. O'Toole*, 94 F.3d 1014, 1021 (6th Cir. 1996). When reviewing a motion for a new trial based on alleged errors in jury instructions, the instructions are to be reviewed "as a whole to determine whether they fairly and adequately submitted the issues and applicable law to the jury." *Arban v. West Publishing Corp.*, 345 F.3d 390, 404 (6th Cir. 2003) (citing *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 966 (6th Cir. 1998)). "A party is not entitled to a new trial based upon alleged deficiencies in the jury instructions unless the instructions, taken as a whole, are misleading or give an inadequate understanding of the law." *Id.* If a Court becomes convinced it gave erroneous jury instructions which seriously undermine confidence in the verdict, the grant of a motion for new trial is appropriate. *Pick v. General Electric Co.*, 1999 WL 187448 (6th Cir. Mar. 8. 1999); *United States v. Bustamante*, 1992 WL 192545 (6th Cir. Aug. 12, 1992). In particular, "[o]bvious and prejudicial error in instructing the jury constitutes grounds for a new trial." *Fryman v. Federal Crop Ins.*

*Corp.*, 936 F.2d 244, 248 (6th Cir. 1991) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). The grant of a new trial following erroneous jury instructions "falls within the trial court's discretion to act to prevent a miscarriage of justice." *Id.*; *Wilhelm v. Blue Bell, Inc.*, 773 F.2d 1429, 1433-35 (4th Cir. 1985), *cert. denied*, 475 U.S. 1016, (1986). The critical inquiry is "whether the instructions as a whole provide the jury with sufficient guidance concerning the issues to be tried." *Bagherzadeh v. Roeser*, 825 F.2d 1000, 1003 (6th Cir. 1987) (quoting *Teal v. E.I. Dupont de Nemours and Co.*, 728 F.2d 799, 802 (6th Cir. 1984)).

**III.    Analysis.**

Mr. Mann offers a number of arguments in support of his motion for new trial, including: (1) the Court's instruction to the jury on the sophisticated user defense was erroneous; (2) the Court erred when it failed to give the instruction on concurrent negligence set out in SDPJI 12-04; and (3) the verdict is against the weight of the evidence presented at trial. The Court concludes the first of these arguments is well-taken.

The distinction between the sophisticated user defense and the learned intermediary defense bears repeating here, because this distinction is the foundation of the Court's conclusion that the jury instruction it gave was in error. As this Court now understands the terms, the sophisticated user defense is "premised upon the rule that a manufacturer need not warn *members of a trade or profession* (sophisticated users) about dangers generally known to that trade or profession." *Trial Template Order* (master docket no. 2389) at 33 (emphasis added). In the context of this case, the sophisticated user defense would run as follows: Lincoln did not need to warn welders about the danger of manganese fumes in welding rods because welders, as a group, already knew of the risk.

7

This is different from the learned intermediary defense, which "provides that a manufacturer may discharge its duty to warn by providing information about the product's hazards *to a third person*, upon whom the manufacturer can reasonably rely to communicate the information to the ultimate users of the product." *Id.* at 33-34 (emphasis added). In the context of this case, the learned intermediary defense would run as follows: Lincoln did not need to warn welders about the danger of manganese fumes in welding rods because Lincoln had already warned Trail King about this danger, and Trail King had a duty to pass the information on to its welder-employees – including Mr. Mann.

The difference between the two doctrines is important, but the difference is sometimes blurred, as Courts often use different and overlapping terminology to refer to these doctrines. Indeed, other courts sometimes use the term "sophisticated user" to refer to a "learned intermediary."[7] Although the parties and this Court also sometimes referred to the defense that Lincoln wanted to interpose as the sophisticated user defense, the instruction the Court actually gave to the jury was clearly directed at the learned intermediary defense. Specifically, the Court instructed as follows:

> The defendant claims that a warning about the threat of neurological injury from welding fumes was unnecessary because the defendant had reason to believe that Mr. Mann's employers already knew, or had reason to know, about this danger, and had reason to believe these employers would communicate that danger to Mr. Mann.
> Under the law, no warning is necessary if the potential recipients already have the necessary information. A manufacturer has no duty to warn about potential hazards associated with its products when it sells them to a sophisticated purchaser on whom it can reasonably rely to warn ultimate product users. A sophisticated purchaser is someone who has independent knowledge of a product's hazards or, like a knowledgeable employer in a knowledgeable industry, an entity that can be expected to know about such hazards and to inform the ultimate user of the risks. Simply stated, the sophisticated user defense is permitted in cases involving an employer who was aware of or can be expected to know about the inherent dangers of a product which the employer purchased for use in his business. Such an employer has a duty to warn his employees of the dangers of the product.
> To prevail on the sophisticated user defense, the defendant must prove the

---

[7] *See* footnotes 1 & 5, above.

8

>following three elements by a preponderance of the evidence, with respect to the time periods during which Mr. Mann was exposed to the defendant's products:
>
>1. Mr. Mann's employers received adequate warnings and instructions from the defendant, or had the same level of expertise and knowledge about the dangers of welding fumes as did the defendant itself;
>2. Mr. Mann's employers could be reasonably expected to convey that information to Mr. Mann; and
>3. at the time the defendant was selling to the employers the products that allegedly injured Mr. Mann, the defendant itself had reason to believe that Mr. Mann's employers had this knowledge and expertise about neurological injury and welding fumes, and had reason to believe that Mr. Mann's employers would convey that information to Mr. Mann.
>
>If, and only if, you find that a defendant has proved, by a preponderance of the evidence, all three elements of the sophisticated user defense, then you must find that defendant is not liable to Mr. Mann on his claim for negligence.

Trial tr. at 2908-09 (May 24, 2010).

At the same time, the Court gave the jury the following instruction regarding Mr. Mann's negligence claim:

>To prevail on a claim for negligence against the defendant, Mr. Mann must prove each of the following six elements, by a preponderance of the evidence:
>(1) the defendant knew, or reasonably should have known, that the product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner;
>(2) the defendant knew, or reasonably should have known, that users would not realize the danger;
>(3) the defendant failed to exercise reasonable care and adequately warn of the danger or instruct on the safe use of the product;
>(4) a reasonable manufacturer under the same or similar circumstances would have warned of the danger or instructed on the safe use of the product;
>(5) Mr. Mann was harmed; and
>(6) the defendant's failure to warn or instruct was a proximate cause of Mr. Mann's injury.
>
>If, and only if, you find that Mr. Mann proved, by a preponderance of the evidence, all six elements of his negligence claim against the defendant, may you then find the defendant liable to Mr. Mann on that claim.

*Id.* at 2902-03.

Taken together, these instructions told the jury that, even if Mr. Mann proved all the elements of his negligence claim – including proof that Lincoln "failed to exercise reasonable care and adequately warn of the danger or instruct on the safe use of [welding rods]" – it should return a verdict in favor of Lincoln if it also concluded that Trail King "received adequate warnings and instructions from [Lincoln], or had the same level of expertise and knowledge about the dangers of welding fumes as did [Lincoln] itself." In other words, the jury was instructed that, even if Lincoln did not adequately warn Mr. Mann, and even if that failure proximately caused Mr. Mann's injury, Lincoln is not liable if it warned Trail King, or if Trail King already knew about the danger on its own. The jury followed these instructions precisely, concluding that Mr. Mann did prove all the elements of his claim for negligence, but also concluding that Lincoln was not liable because Lincoln proved all the elements of its learned intermediary defense.

As noted, the South Dakota Pattern Jury Instructions do not contain any instruction on the learned intermediary defense. Further, the South Dakota Supreme Court has never stated it would – or would not – adopt this doctrine. When a federal Court exercising diversity jurisdiction has to evaluate an undecided question of state law, the Court must make "'the best prediction . . . of what the [State] Supreme Court would do if it were confronted with [the] question."[8] *Combs v. International Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64). "If the relevant state judiciary has not spoken to the issue, courts sitting in diversity should consider 'all relevant data,' including jurisprudence from other jurisdictions." *Id.* (quoting *Kingsley Associates, Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995). However, a federal court sitting in diversity is "in a particularly poor position . . . to endorse [a] fundamental policy innovation . . . . [A Court] must apply the law of the forum as [it] infer[s]

---

[8] *See* trial tr. at 2853-54 (May 24, 2010) ("And just a note on the Court's reasoning, the Court found that it was very far from clear as to whether the South Dakota Supreme Court would recognize the sophisticated user defense at all. There is no law directly on the subject.")

10

it presently to be, not as it might come to be." *Dayton v. Peck, Stow and Wilcox Co. (Pexto)*, 739 F.2d 690, 694 (1st Cir. 1984).

During trial, when this Court was assessing whether the South Dakota Supreme Court would apply the learned intermediary defense, the Court came to the conclusion that this defense – whether termed the "learned intermediary defense" or the "sophisticated user defense" – is widely accepted. Additional research and the parties' post-judgment briefs reveal, however, that: (1) the learned intermediary defense is widely accepted *when interposed by pharmaceutical manufacturers*; and (2) the sophisticated user defense is widely accepted in the employer/employee context *when the employee is also sophisticated*. The different States are far less accepting of the rule that the learned intermediary defense applies in the context of this case, and as this Court described it in the jury instructions.

The following examples are illustrative. The State of Connecticut has long recognized the learned intermediary doctrine in the context of prescription drugs. *See Goodson v. Searle Labs.*, 471 F.Supp. 546, 548 (D. Conn. 1978) (citing *Basko v. Sterling Drug, Inc.*, 416 F.2d 417 (2nd Cir. 1969)) ("the manufacturer of a prescription drug has a duty to warn the physician, not the patient," and "[i]n the case of prescription drugs, the manufacturer can fulfill its duty to warn by warning the medical profession of the side effects of the drug"); *Hall v. Ashland Oil Co.*, 625 F.Supp. 1515, 1518 (D. Conn. 1986) ("The learned intermediary theory developed in the area of prescription drugs, where courts have held that a manufacturer can fulfill its duty to warn by supplying an adequate warning to the medical profession concerning risks attendant upon use of a drug.") (citing *Basko*). But Connecticut has been loathe to extend the doctrine beyond the area of prescription drugs and "apply[] the learned intermediary doctrine in the area of employer/employee relationships." *Hall*, 625 F.Supp. at 1519. This is because "the prescription drug cases, in relieving manufacturers of the duty to warn drug users, shift that duty on to a party who can

be held legally liable to the patient for failing to fulfill it.  This powerful incentive is absent in the case of an employer whose liability is limited by the exclusive remedy provisions of the workman's compensation statutes." *Id.* at 1520.  Thus, while Connecticut recognizes the learned intermediary defense, it would *not* apply it in the context of this case.  The doctrine applies only in drug cases to the doctor/patient relationship, not in other product liability cases to the employer/employee relationship.

South Dakota's sister state in the Eighth Circuit, Minnesota, agrees with the *Hall* court's analysis on this issue.  In *Todalen v. U.S. Chemical Co.*, 424 N.W.2d 73 (Minn. Ct. App. 1988), the court noted that Minnesota law recognizes "learned intermediate theory in the area of prescription drug liability." *Id.* at 79.  But the *Todalen* court quoted *Hall* at length and declined to hold that a manufacturer has no duty to "warn employees of its industrial customers of dangers associated with its products where the customer (employer) was a knowledgeable user." *Id.*  At least three other sister states in the Eighth Circuit have also explicitly *refused* to extend the learned intermediary doctrine beyond the area of prescription drugs.[9]  These cases all raise very serious doubt whether this Court was correct with its earlier prediction that South Dakota would adopt the learned intermediary defense in the context of the employer/employee

---

[9] *See Donahue v. Phillips Petroleum Co.*, 866 F.2d 1008, 1013 n.9 (8th Cir. 1989) ("Missouri courts have developed another exception, known as the 'learned intermediary' doctrine, for the special case involving a drug manufacturer that supplies prescription drugs to a doctor, who then prescribes them to a patient.  The rationale for that exception, that a patient may obtain the product only through a qualified professional who presumably will explain the dangers of the product to the patient, cannot sensibly be stretched to apply to this case [involving liquid propane].  Whatever else [the supplier] Williams Pipeline may be, it is not a "learned intermediary" within the meaning of the Missouri doctrine."); *Russell v. Ashland, Inc.*, 574 F.Supp.2d 957 (W.D. Ark. 2008) ("Affording [the manufacturing] Defendants effective immunity based upon the purported sophistication of or knowledge on the part of [the plaintiff's employer] is inappropriate") (citing *Hall*); *Vondra v. Chevron U.S.A., Inc.*, 652 F.Supp.2d 999 (D. Neb. 2009) ("the rationale for the learned intermediary doctrine, that a patient may obtain a product only through a qualified professional who presumably will explain the dangers of the product to the patient, 'cannot sensibly be stretched to apply' in all industrial employer/employee situations") (quoting *Donahue* and citing *Hall*).

relationship between Trail King and Mr. Mann.

Further, while Lincoln cites a number of cases for the proposition that many states recognize the "sophisticated user defense" in the employer/employee context, these cases generally provide that the defense applies when the employee, himself, is *also* sophisticated. An example from another State in the Eighth Circuit, Nebraska, is illustrative. In *Strong v. E.I. Dupont Nemours Co.*, 667 F.2d 682 (8th Cir. 1981), the plaintiff worked as a supervisor for a natural gas company and was killed in an explosion. His estate sued, among others, the manufacturer of a gas-pipe connecting device, claiming the manufacturer did not warn of certain conditions where the device could fail and allow gas to escape. At the close of the plaintiff's case, the trial court directed a verdict in favor of the device manufacturer. The *Strong* court affirmed, reasoning that the "[trial] judge could find that [the device manufacturer] had no duty to warn [the employer] of the potential . . . problem" because "the dangers of [the] product [were] within the professional knowledge of the [employer]." *Id.* at 686-87.

Lincoln cites *Strong* for the proposition that "the majority of jurisdictions have applied the sophisticated user defense within the employer-employee context, recognizing that a manufacturer must be able to reasonably rely on a sophisticated employer to warn the end user – i.e., its employee." Response brief at 17-18. But the *Strong* court was careful to note repeatedly that the employer *and the plaintiff-employee* both knew of the hazard. *Strong*, 667 F.2d at 686-88. The court explained: "Even if [the manufacturer] was under a duty to warn, its failure to do so could not have been the proximate cause of the accident because [the employer] *and [the plaintiff-employee]* were aware of the danger. If, despite deficient warnings by the manufacturer, *a user* is fully aware of the danger which a warning would alert him or her of, then the lack of warning is not the proximate cause of the injury." *Id.* at 688 (emphasis added). It is reading far too much into *Strong* to assert it holds that a manufacturer is relieved of a duty

13

to warn a product-user simply by warning the user's employer. Analysis of virtually every other jurisdiction cited by Lincoln yields similar results.[10]

Finally, the Court's strong belief that the South Dakota Supreme Court would not adopt the learned intermediary defense in the context of this case is bolstered by examination of the South Dakota Pattern Jury Instructions. As noted, the SDPJI do not contain any instruction addressing the learned intermediary defense. Further, the SDPJI *does* contain instruction 12-04, titled "Concurrent Negligence," which states that, if "the defendant was negligent and . . . the defendant's negligence was a proximate cause of the plaintiff's injury, it is not a defense that some third party, not a party to th[e] action, was partly responsible." The South Dakota Supreme Court has held this instruction should be given when a defendant "relie[s] upon the negligence of [a] third party in attempting to persuade the jury that [the defendant was] not negligently responsible for [the plaintiff's] injury." *Wolf v. Graber*, 303 N.W.2d 364, 367 (S.D. 1981). Without reaching the question of whether the Court should have given this instruction to the jury in this case (as Mr. Mann asserted), it is now clear that the rule of law expressed in SDPJI 12-04 is, at the very least, not easily reconciled with the learned intermediary defense – which, contrary to 12-04, *can* work to relieve a defendant of liability based on the negligence of a third party. In other words, the

---

[10] *See, e.g., Akin v. Ashland Chemical Co.*, 156 F.3d 1030, 1037 (10th Cir. 1998) ("Because of the wealth of research available, the ability of the Air Force to conduct studies, and its extremely knowledgeable staff, we find that the Air Force easily qualifies as a 'knowledgeable purchaser' that should have known the risks involved with low-level chemical exposure. *Employees of the Air Force are also deemed to possess the necessary level of sophistication*, so that defendants had no duty to warn the Air Force or its employees of the potential hazards.") (emphasis added); *Jackson v. Coast Paint & Lacquer Co.*, 499 F.2d 809, 813 (9th Cir. 1974) ("The most serious error in the challenged instruction is the statement that knowledge of the hazard on the part of plaintiff's employer would obviate any duty to warn plaintiff. * * * At least in the case of paint sold in labeled containers, the adequacy of warnings must be measured according to whatever knowledge and understanding may be common to painters who will actually open the containers and use the paints; the possibly superior knowledge and understanding of painting contractors is irrelevant.").

existence of SDPJI 12-04 suggests against adoption of the learned intermediary defense in this case.[11]

**IV. Conclusion.**

During trial, this Court made its best prediction of what the South Dakota Supreme Court would do if confronted with the question of whether to recognize the learned intermediary defense in the context of this case. The Court predicted South Dakota would recognize the defense and instructed accordingly. The Court now believes this conclusion was in error. It is not the case that the majority of States have recognized the learned intermediary defense in the context of employer/employee relations, and other South Dakota Pattern Jury Instructions suggest South Dakota would not recognize it either. It is clear the Court's decision to instruct on the learned intermediary defense was prejudicial to Mr. Mann, as it relieved Lincoln of liability even though the jury found in favor of Mr. Mann on his negligence claim.

Mr. Mann argues that, if the Court grants his motion for new trial, the new trial should be limited to a determination of damages. Specifically, Mr. Mann asserts the first jury's determination of negligence should stand, its determination that Lincoln was shielded by the learned intermediary defense should be stricken, and the only issues left for determination at a second trial would be contributory negligence and damages (including punitive damages). The Court concludes, however, that these "remaining issues" are so tied up with liability that a new trial on all issues is the only fair procedure. *See Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931) ("Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice. Here the question of damages on the counterclaim is so interwoven with that of liability that the former cannot be submitted

---

[11] *See also* SDPJI 105-14 ("A manufacturer is not relieved of liability simply because a third person has a duty to inspect the injury-causing product.").

to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial.").

Accordingly, the Court grants Mr. Mann's motion for new trial on all issues.

**IT IS SO ORDERED.**

/s/ David D. Dowd
**DAVID D. DOWD**
**UNITED STATES DISTRICT JUDGE**

**DATED**: October 15, 2010